***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and oral arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Deluca and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on the date of injury October 4, 2005.
2. An employer-employee relationship existed between the Plaintiff and Defendant/Employer on October 4, 2005.
3. Defendant-employer was self-insured and the administrator was Key Risk Management at the time of Plaintiff's injury. Corvel has now assumed that responsibility.
4. The date of Plaintiff's injury is October 4, 2005.
5. The Defendant accepted the claim for medical only.
6. After the hearing, the parties stipulated to an average weekly wage of $624.18 and a compensation rate of $416.14.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on March 19, 1976. Plaintiff is a college graduate with some graduate school coursework completed. Plaintiff has a North Carolina Health and Life Insurance license.
2. Plaintiff started working with Defendant on September 13, 2004. Plaintiff worked for Nash Community College as a GED teacher. Plaintiff's job duties included teaching classes at Nash Correctional Institute.
3. On October 4, 2005, Plaintiff was lifting a box that weighed more than 100 pounds and felt back pain. Plaintiff reported the injury to his supervisor immediately. Plaintiff filed a form 18 on June 1, 2007, and a Form 60 was filed on June 21, 2007, accepting low back pain. *Page 3 
4. Following the incident, Plaintiff treated at the Urgent Care on Wednesday, October 12, 2005, and was instructed to report to work on Thursday, October 13, 2005.
5. On October 13, 2005, Plaintiff treated with Dr. Michelle Shiver at the Boice Willis Clinic. Plaintiff relayed a history of a lumbar sprain and was diagnosed with acute lumbago. Dr. Shiver took Plaintiff out of work through October 16, 2005, and allowed him to return on Monday October 17, 2005.
6. Beginning in January of 2006, Plaintiff treated with Dr. Clark of Hammer Chiropractic for low back pain on his own referral. Plaintiff made Defendant-Employer aware that he was receiving treatment with Hammer Chiropractic and was never advised that the treatment was not authorized or not covered by workers compensation. Dr. Clark was not an authorized treating physician according to Defendant, and his treatment was not paid for by Defendant.
7. On February 9, 2006, Plaintiff saw Dr. Greig V. McAvoy, an authorized physician. Plaintiff gave a history of injury to his back on October 4, 2005, while moving boxes, and then said that on October 11, 2005, he aggravated it moving the boxes back. Dr. McAvoy noted Plaintiff ambulated normally, and after reviewing x-rays Plaintiff brought from Dr. Clark's office, he noted that there was normal alignment on the lateral view with a normal lumbar lordosis with normal appearing S1 joints. Dr. McAvoy prescribed physical therapy and indicated a need for anti-inflammatory medications along with a follow-up visit in six weeks.
8. Mr. Johnson continued with physical *Page 4 
therapy at the chiropractor's office. He made the Defendant-Employer aware that he continued to receive physical therapy at the chiropractor's office. He was never told by the Defendant that he could not receive physical therapy at the chiropractor. Defendant never set up physical therapy appointments with any other doctor.
9. On March 25, 2006, x-rays of Plaintiff's neck showed normal soft tissue.
10. Mr. Johnson continued seeing Dr. Clark until he was referred to a neurosurgeon, Dr. Raymond Baule of Atlantic Neurosurgery, for treatment. Mr. Johnson made the Defendant-Employer aware that he was going to see Dr. Baule in October of 2006. Dr. Baule saw Plaintiff on October 31, 2006, at the request of Dr. Clark due to Plaintiff's continuing back pain. Dr. Baule was not considered by Defendant to be an authorized treating physician and Plaintiff did not request that Defendant pay for Dr. Baule's treatment at that time. Dr. Baule's records show a worsening of symptoms, including radiation of the pain into the lower extremities.
11. On November 11, 2006, cervical spine films were taken that showed three views of the cervical spine demonstrating anatomic alignment. There was no acute fracture or dislocation. There were mild changes of degenerative disk disease at C6-7.
12. Dr. Baule ordered an MRI that was done on November 17, 2006, which showed desiccated disks at L5-S1.
13. Plaintiff made the employer aware of his visit to Dr. Baule. He was not advised that Dr. Baule was unauthorized, nor was he instructed to seek medical treatment with a different physician of the Defendant's choosing.
14. When Plaintiff returned to see Dr. Baule on November 28, 2006, Dr. Baule reviewed the MRI and recommended conservative treatment. On November 29, 2006, Dr. Baule gave Plaintiff a note to be out of work until December 1, 2006. Plaintiff provided the note to his supervisor. On December 1, 2006, Plaintiff was released by Dr. Baule to return to work without restrictions. *Page 5 
15. On December 11, 2006, Plaintiff sought treatment at Boice Willis Clinic, reporting that he was leaning on a table and the table legs gave way. Plaintiff reported lower back pain, neck pain, and radiating pain to his knees. Plaintiff also reported shoulder pain and was given the restriction of no heavy lifting. Three views of the lumbar spine were taken on December 11, 2006, and there was no evidence of acute fracture or dislocation but there was a finding of a degenerative disk at L6-S1 with L6 representing the 6th non-vertebral bearing vertebral body. On December 15, 2006, Plaintiff got an out-of-work note from Dr. Baule for December 15, 2006, through January 2, 2007.
16. On January 2, 2007, Plaintiff returned to see Dr. Baule, who reviewed another MRI scan of the cervical spine and found the results were negative.
17. On March 29, 2007, Defendant sent a Workers' Compensation Medical Status Questionnaire to Dr. Baule. Specifically checked was the #1 box of diagnosis, to which Dr. Baule put, "lumbar spondylosis and lumbar disc disruption." Also checked was #2 which asked the doctor whether there is a relationship between the injury and a work incident. Dr. Baule put "N/A."
18. On April 12, 2007, Plaintiff had nerve conduction studies on his lumbar spine. The study was conducted by Dr. Cynthia Lopez, who found Plaintiff's results to be "essentially normal".
19. Plaintiff last worked on April 26, 2007.
20. On April 26, 2007, Plaintiff returned to see Dr. Baule and was taken out of work until June 19, 2007, and then later until July 31, 2007.
21. On May 8, 2007, Plaintiff saw Dr. Robert F. Saul for a consultation which was authorized by Defendant. Dr. Saul reviewed Plaintiff's MRIs and did not find a great amount of *Page 6 
compression. Dr. Saul found that Plaintiff walked perfectly fine unassisted. Dr. Saul found no reason Plaintiff could not continue to teach. Dr. Saul looked at Plaintiff's cervical and lumbar spine MRIs and saw no major obstruction to the nerve roots. Dr. Saul referred Plaintiff back to Dr. Baule for surgical options.
22. On May 9, 2007, Plaintiff left a message with Susan Barkalow, Personnel Director for Nash Community College, that he had been taken out of work by Dr. Saul. When Ms. Barkalow received the doctor's note, it did not reflect that he was not taken out of work by Dr. Saul.
23. On May 21, 2007, a letter was mailed to Plaintiff's address which was returned by the United States Postal Service on June 7, 2007. The letter inquired if Plaintiff planned to return to work.
24. On May 25, 2007, another letter was mailed, which was also returned unclaimed, which stated that Dr. Baule was not an authorized physician. On June 6, 2007, Plaintiff was discharged for unavailability.
25. On June 17, 2007, Plaintiff filed for unemployment benefits with the North Carolina Employment Security Commission. Plaintiff's claim was denied based on a determination he had engaged in misconduct connected with the work. Plaintiff appealed the decision, and the decision was affirmed.
26. On July 31, 2007, Plaintiff returned to Dr. Baule, who said he did not feel he could help Plaintiff with surgery. Dr. Baule referred Plaintiff to Dr. Kurt Voos and released him from his care.
27. On September 27, 2007, Plaintiff went to see Dr. Kurt Voos of the Spine Center for Scoliosis and Spinal Surgery. Plaintiff gave a history of a work incident lifting a box. Dr. *Page 7 
Voos began treating Plaintiff for degenerative problems to L5-S1, which Dr. Voos said was referred by past physicians as L4-5.
28. Dr. Voos ordered a series of tests to be performed. He obtained a contrast CT scan. The scan revealed the following results:
 L5-L6 grade IV annular tear extending into a left paracentral broad-based disc herniation. Moderate effacement of the thecal sac, greater on the left, with possible more focal impingement at traversing left L5 nerve root. Moderate left and mild right-sided neural foraminal narrowing.
 Mild to moderate leftward asymmetric disc osteophyte complex contacting the traversing left S1 nerve root. Severe left-sided neural foraminal narrowing from focal disc osteophyte complex, possibly affecting the exiting left L6 nerve root.
29. Dr. Voos also ordered a diskogram. The diskogram confirmed disk disruption and nerve root irritation causing the pain. The results state that:
 SUMMARY: The second level from the bottom, we were able to study, that is the L5-L6 disk, and he had an extreme response to that in regards to his pain. It was highly concordant. Disk appearance was bilobular with a posterior herniation.
30. Based on these positive findings, and the failure of two years of conservative treatment, Dr. Voos determined that surgery was appropriate. Surgery was performed on or about August 21, 2008. The operation consisted of a "transforaminal lumbar fusion at L5-6 and posterior instrumented fusion at L5-6". Plaintiff was discharged from the hospital on August 28, 2008. Dr. Voos felt the surgery was successful and provided Plaintiff with 70% relief. At the time of discharge the physical therapist stated that he "will require 24/7 supervision" and a "rolling walker" when discharged.
31. Plaintiff was seen by Dr. Voos after the surgery, the most recent appointment being February 2, 2009. Dr. Voos noted the following: *Page 8 
 Mr. Johnson presents today for follow up of his lumbar spine. He states that he is walking approximately one mile four times per week. He still has some complaints of lower back and leg pain. He is status post L4-L5 posterior instrumented fusion. The hardware is in place and intact with good consolidating fusion at this point. He is neurologically intact.
 My plan is to go ahead and set him up with some physical therapy, a Sterapred Dosepak and Neurontin. We will see him back after physical therapy and make further recommendations upon his return.
32. Dr. Voos continues to follow Plaintiff for post surgical recovery. At the time of his deposition, Dr. Voos had not assigned a permanent disability rating and had not determined that Plaintiff had reached maximum medical improvement.
33. The stipulated medical records are consistent and provide causation evidence that the compensable injury exacerbated an underlying condition which resulted in the back pain and subsequent surgery to relieve the pain.
34. Dr. Voos also provided causation testimony that the work injury exacerbated an underlying condition that produced the low back problems that he treated. The Full Commission finds this testimony by Dr. Voos to be credible and accepts it as fact.
35. Mr. Johnson has not reached maximum medical improvement.
36. The treatment rendered by Dr. Clark, Dr. Baule, and Dr. Voos, including the surgery performed, was reasonable and necessary. The treatment tended to effect a cure, give relief, or shorten the period of disability resulting from Plaintiff's injury.
37. The Plaintiff-Employee has been temporarily totally disabled since April 27, 2007.
 *********** *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 4, 2005, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6). Plaintiff's additional back pain after December 11, 2006 was causally related to the compensable injury. Holley v. Acts Corp.,357 N.C. 228 (2003).
2. Plaintiff did not refuse suitable employment on and after April 27, 2007. N.C. Gen. Stat. § 97-32.
3. Defendant is obligated to pay bills for the medical treatment rendered or authorized by Dr. Clark, Dr. Baule, and Dr. Voos, as well as any such other medical treatment as may tend to effect a cure, give relief, or shorten the period of disability resulting from Plaintiff's injury by accident. N.C. Gen. Stat. §§ 97-25 and 97-2(19); Hyler v. GTE ProductsCo., 333 N.C. 258, 425 S.E.2d 698 (1993). Plaintiff is entitled to have his medical expenses for treatment by Dr. Clark, Dr. Baule, and Dr. Voos, paid by Defendant as these treatments are now authorized by the Industrial Commission. N.C. Gen. Stat. §§ 97-25 and 97-85.
4. Plaintiff has been temporarily totally disabled beginning April 27, 2007, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. Defendant's defense of this claim was reasonable, and not based upon unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following: *Page 10 
 AWARD
1. Defendant shall pay to Plaintiff compensation for TTD at a rate of $416.14 per week from April 27, 2007, until further order of the Commission. All accrued benefits shall be paid in a lump sum, subject to the attorney's fees approved in paragraph 2 below.
2. An attorney's fee of twenty-five percent (25%) of the accrued back payment of TTD is approved for Plaintiff's attorney. Thereafter, every fourth (4th) TTD check shall be made payable and forwarded to Plaintiff's attorney until further order of the Commission.
3. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, Defendant shall pay all medical expenses incurred by Plaintiff as a result of his compensable injury, including continued medical care provided by Dr. Voos, and any surgical services deemed necessary to relieve Plaintiff's continuing back pain from his compensable injury.
4. The Defendant shall pay the costs.
This the 3rd day of May, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 11 
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1